## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**STANLEY BASS,**

     **Plaintiff,**

**vs.**                                                    **CASE NO. 4:06CV266-RH/AK**

**J. BRANNON, et al,**

     **Defendants.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that the Defendants used excessive force against him during his arrest.  (Doc. 23).  Defendants have responded by filing a Special Report (doc. 33) and supplement thereto (doc. 34), which have been construed as a motion for summary judgment.  (Doc. 36).  Plaintiff has filed a response.  (Doc. 42).

**I.      Amended Complaint (doc. 23)**

Plaintiff claims that following a threatening incident with several unidentified men he ran to the closest home he knew, his sister's, and knocked on her window.  He was scared and being chased so he broke in through the window and when his sister turned on the light to see him, he became "paranoid" and grabbed her, and then he accidently knocked his grandmother down, too, but it was because he was weak and could not stand up.  His sister and the paramedics, who had arrived, thought he had been shot.

He claims that when Defendant Officer Finales first approached him in the house he thought Plaintiff was just drunk or high, and Finales told the paramedics to take care of him, but when the paramedics yelled that he had been shot Finales returned with his gun drawn and found Plaintiff and his sister in the bathroom.  Finales told the sister to leave, but she stayed and watched.  Finales allegedly told Plaintiff to get up off the bathroom floor, but he could not.  Plaintiff's sister saw him hold his "hand" up.  Finales tried to pull Plaintiff by the legs out of the bathroom and Plaintiff tried to crawl backwards, but his back was up against the tub and he could not get out.  When Plaintiff could not get up, Finales began tasering him, first three times, and then six more times.  By this time, Plaintiff claims that he was in such pain and weak from the tasering that the could not get up, and at this point Defendant Officer Larremore began tasering him as well (four more times).  While he was almost unconscious from this, Defendant Officer Brannon allegedly asked to "have a shot" and hit Plaintiff "about 10 times" with his flashlight.  Allegedly Finales then began hitting Plaintiff with his baton about "5 or 6 more times," and Plaintiff passed out hearing his sister screaming at them to stop.  When he awoke he was handcuffed and his legs were restrained.  He spent 3 days in the hospital and was charged with burglary, assault and felony battery, and resisting an officer with violence.

Plaintiff claims to have permanent scars on his hands, legs and chest from the beatings he received from the officers, and it was the beating that sent him to the hospital.

**No. 4:06cv266-RH/AK**

Plaintiff seeks $500,000. from each defendant for punitive damages and $500,000. from each defendant for compensatory damages, and he wants some type of disciplinary action placed in their files.

## II.   Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

**No. 4:06cv266-RH/AK**

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

## III.   Defendants' Rule 56(e) evidence (doc. 33)

a)   <u>Information in Case No. 05CF03233</u> (exhibit A)

Plaintiff was charged with five counts resulting from an incident on September 3, 2005: Burglary of Dwelling with Person Assaulted; Battery on Person 65 years or older; Felony Battery; Felony Battery; and Resisting Officer with Violence.  These charges arise from the incident described in the complaint and the battery charges are for causing bodily harm to his grandmother, sister and another person, Shanteria Pugh. The burglary is of the home where his grandmother and sister were residing.

**No. 4:06cv266-RH/AK**

b)      <u>Probable Cause Affidavit</u> (exhibit B)

Written by Defendant Finales, he reports that he was sent to the residence in reference to a 911 hang up call.  He was advised by dispatch that a male had jumped through a window.  EMS was already there when Finales arrived, but EMS ran out of the house saying that there had been a shooting.  Witnesses Cynthia Bass and Swanson Kimons were outside and said that Plaintiff had just beat up his girlfriend and thrown Ms. Bass' mother to the ground.  They also told the officers that Plaintiff had a gun.  Finales met Ms. Cooper (the grandmother) at the door and she told him Plaintiff was inside with her daughter.  Finales found Plaintiff laying face down in the bathroom with Mrs. Moore-Pugh.  Finales pulled Ms. Moore-Pugh out of the bathroom and Plaintiff locked the door.  Officers Johnson and Brannon arrived and Plaintiff was asked to unlock the door, he did not, and Finales kicked the door in.  All officers had their weapons drawn.  Plaintiff had multiple lacerations on his feet, arms and legs and stated that he could not move.  When the officers tried to grab his legs, he kicked them, and the officers determined that he could move, but would not.  Finales tasered him 3 times on his upper body, and Plaintiff continued to ignore verbal commands to get up.  Finales tasered him six more times.  The officers tried to pull him out again and he started kicking them.  Officer Larremore tasered him about 3 or 4 times, and Officer Brannon hit him on the thigh with his flashlight several times.  Finales struck him once with his baton.  When Plaintiff moved to shield himself, Finales was able to handcuff him and restrain him "with hobbles."  The scene was bloody from Plaintiff's injuries.  Ms. Cooper, Ms. Moore-Pugh, and two juveniles were interviewed.  One of the juveniles

**No. 4:06cv266-RH/AK**

stated that Plaintiff had knocked her down.  No one would press charges, but stated that Plaintiff used crack cocaine, was probably high, and had broken into the house, knocked Ms. Cooper to the ground, and was bleeding badly when he got there such that Ms. Moore-Pugh thought he had been shot and called the police and her sister. Plaintiff was taken to the hospital accompanied by Defendant Larremore because he was being uncooperative with EM personnel.

Physical evidence recovered showed that a bedroom window was broken from the outside, possibly by Plaintiff's hands since blood was apparent on the window and had dripped from the window to the bathroom.

 c) <u>Plea and Acknowledgment of Rights </u>(exhibit C)

Plaintiff pled no contest to all five counts, including resisting arrest with violence, and was sentenced to 60 months to be served in its entirety because he was a repeat offender.

 d) <u>Sentencing hearing transcript </u>(exhibit D)

The transcript shows that Plaintiff pled no contest to all five charges with the understanding that this was an adjudication of guilt on the charges.  A statement of facts the state would prove if Plaintiff went to trial was read into the record.  This statement was as follows:

> Judge, on September 3, 2005, Stanley Bass entered the dwelling of his grandmother, Classie Cooper, and sister, Katrina Moore Pugh, by coming through a window, broke the window to gain entry.  At that time, he made contact with his grandmother, pushed her to the ground.  That would satisfy the element of burglary of a dwelling, person assaulted.
> He also at the same time pushed Katrine Moore Pugh and grabbed her into a bathroom against her will.  When police arrived, it was a chaotic situation.  He had injured himself through the window with the glass and

**No. 4:06cv266-RH/AK**

there was blood everywhere.  The police entered with their weapons
drawn, ordered him to let go of Katrina Moore Pugh.  He failed to do that.
They pulled her away from him.
He then locked himself into the bathroom.  They commanded him to open
the door, he refused to do so.  The door was kicked in.  He was laying
with his hands behind him.  They ordered him to show his hands, show
his hands, he refused to do that.  When they tried to remove him, he
started kicking and flailing at them.  That's the resisting with violence
charge.
I will note prior to that, the felony battery charges of Count 4 is a ten year
old child who he pushed to the ground, along with the grandmother.

The Court clarified that Plaintiff was pleading guilty to Count 5, the resisting

violence charge, and the other 4 counts were nol-prossed because the witnesses to

those charges were proving to be "difficult."

   e)   <u>Affidavit of Defendant Reynaldo Finales </u>(exhibit E)

The facts as set forth in the affidavit are basically the same facts recited in the

Probable Cause Affidavit above (exhibit B), with the following additional information

pertinent to the claims raised in the complaint.  Finales attests that the paramedic came

out of the house and told him that the suspect was in the house with a woman, he had

a gun, and he had battered an elderly woman.  When Finales came upon Plaintiff he

was lying in the bathroom with one hand draped over the bathtub and hidden from his

view so that he was unsure whether Plaintiff had a weapon in that hand or not.  Finales

said all the officers had their weapons drawn and were concerned that Plaintiff had a

weapon in his right hand because he would not show his hands or get out of the

bathroom.  Finales fired his taser at Plaintiff a total of nine times because it appeared to

have no effect on Plaintiff and Finales learned later that he had a broken lead in the

taser.  When Officer Larremore saw that Finales' taser was not working he used his

**No. 4:06cv266-RH/AK**

own, which caused Plaintiff to reveal his right hand and allow him to be pulled from the bathroom.  Plaintiff still continued kicking and grabbing at Officer Brannon, so Brannon and Finales hit him several times before they were finally able to handcuff Plaintiff.  Plaintiff was exhibiting a level five level of resistance.  (See Exhibit J below).

      f)      Affidavit of Defendant Joseph Brannon (exhibit F)

Officers Brannon and Johnson arrived at the residence on the date in question and heard Officer Finales yelling from down the hallway.  There were no other persons in the hallway.  When Officer Brannon approached he saw blood smeared on the hallway walls and on the doors and saw Plaintiff lying on the floor covered in blood and feces.  Plaintiff was in a very small bathroom holding his right hand behind his back and over the tub.  In his professional opinion, Officer Brannon saw no option but to use a taser because he could not enter the bathroom without blocking his partner from view of the situation, they still did not know if Plaintiff had a gun, and he did not want to holster his own weapon to attempt to lift or maneuver Plaintiff out of the bathroom because of this.  The only alternative was to taser Plaintiff into showing his hands and coming out of the bathroom.  When the officer realized Finales' taser was not working, Officer Larremore used his taser several times until Plaintiff finally showed his hands and quit kicking and grabbing at the officers.  These actions were reviewed and found to be within department guidelines for use of force.

      g)      Affidavit of Defendant Gavin Larremore (exhibit G)

Officer Larremore adds that he was standing outside the small bathroom with his gun drawn, and when he saw Finales changing cartridges in his taser because it was

not working, he decided to deploy his own taser so that Plaintiff would remain debilitated and not pull a weapon from behind his back since he had still not shown his right hand.  After hitting Plaintiff once in the upper torso with the taser, Larremore gave verbal commands for him to turn on his face and place his hands behind him, but he refused and Larremore tasered him two more times before the other officers were able to grab Plaintiff by the feet and secure him in handcuffs. Larremore observed serious and deep cuts to Plaintiff's legs and arms from the window he broke and two small puncture marks from the taser.  Officer Brannon believed Plaintiff to be resisting at a Level Five because of his kicking and grabbing.

  h) <u>Affidavit of Brian Johnson (</u>exhibit H)

   Officer Johnson corroborates the other officers' versions of the events, except to add that once Plaintiff showed his hands, Officer Brannon holstered his weapon to attempt to pull Plaintiff out of the bathroom.  Officer Brannon hit Plaintiff with his flashlight because Plaintiff was kicking him.  Officer Johnson also assessed Plaintiff's resistance at a level five because of his kicking and grabbing.

  i) <u>Offense Reporting Form by Katrina Moore-Pugh (</u>exhibit I)

   Ms. Pugh states that she was lying down when she heard someone coming through her window and did not know it was her brother until she turned the lights on, and he began grabbing her grandmother and her children.  He kept saying "just kill me," and she called 911, and then he pulled her into the bathroom with him.  Within a few minutes, "a police officer show up and also tried to help him and was unable due to he (Stanley) wouldn't let them."

**No. 4:06cv266-RH/AK**

j)    <u>Use of Force General Orders Manual</u> (exhibit J)

Level Five resistance is described as: "The suspect becomes assaultive, hostile or makes attacking movements. This includes pushing, kicking, grabbing, and any other attacking actions reasonably perceived to be directed at the officer.  This level of resistance causes the officer to feel these attacks may cause injury, but are not likely to cause death or great bodily harm, to the officer or others."

Level Five response includes: "The officer employs techniques, such as a strike to a major nerve area, with or without an impact weapon, with the intent to stun, temporarily disable, or render a suspect temporarily unconscious.  Incapacitating strikes may have moderate potential for physical harm.  The officer discharges a less lethal firearm containing less lethal munitions."

k)    <u>Standard Operating Procedures Manual</u> (exhibit K)

The policy for using a Taser Weapon System is that only officers trained in its use may carry one, it is considered a Level 4 response, and should be used in an arrest or custodial situation when the subject is escalating resistance from passive physical resistance towards active physical resistance and the subject has the apparent ability to physically challenge or threaten the officer.  A verbal warning should precede the use, a back up officer should be present, and the center mass of the body should be the target area, particularly the upper torso.

**No. 4:06cv266-RH/AK**

l)      Pictures (exhibit L)

Pictures were taken of Plaintiff's legs and feet showing several cuts, some of them very deep around the ankles, and some long cuts around his knees and elbow area.

## IV.   Plaintiff's Response with evidentiary materials (doc. 42)

Plaintiff contends that most of the charges against him were dropped because the witnesses did not want to press charges and that these "primary charges" were nol-prossed.

a)      Sentencing transcript (exhibit A)

Plaintiff has provided a portion of the sentencing transcript to support his contention that  he was scared into pleading guilty to the charge because the court and his attorney told him he was looking at life imprisonment.

b)      Affidavit of Katrina Moore-Pugh (exhibit B)

Ms. Pugh states that she was asleep in her bedroom when someone jumped through the window.  When she turned the lights on it was her brother and he was bleeding, so she called 911.  The police came and asked what was wrong with Stanley and he said he did not know he just wanted to die.  Ms. Pugh then went to use the bathroom and Stanley asked her to let him in and he fell inside the door begging her to help him.  She left the bathroom and the officers came in and tied Stanley's hands behind his back.  She could hear him yelling at the officers not to hurt him and saw through the door that the officers were tasering him over and over.  The officers tasered

**No. 4:06cv266-RH/AK**

him so many times that he had a bowel movement.  The paramedics came in and took

him out and the officers told him there would be no charges filed against him.

    c)      <u>Offense Reporting Form</u> (exhibit C)

    This is the same report Ms. Pugh gave to the police.  (<u>See</u> Doc. 33, Exhibit I

above).

    d)      <u>Affidavit of Swanson Kimmons</u> (exhibit D)

    Mr. Kimmons says he came in the house with Cynthia after Katrina called her

and saw Stanley sitting on the floor bleeding.  A paramedic came in and saw Stanley

and then ran out yelling that Stanley had been shot.  The first officer came in and said

he was not shot he was high on crack.  The officer walked outside to talk to Cynthia and

her grandmother when they all heard Katrina scream.  The officer went back in with his

gun drawn and Mr. Kimmons saw Plaintiff lying on the floor holding Katrina after he fell

due to his injuries.  The officer pointed his gun at Stanley who held his hands in the air

and begged him not to shoot.  The officers then went into the bathroom and asked

Stanley to leave the bathroom and to "turn over, and then they tasered him in his open

wounds causing him to yell very loud."  They grabbed Stanley, pulled him by his feet,

and hit him with a black stick.  Then the paramedics took him to the hospital.  Stanley

was the victim of a crime, not the criminal.

    e)      <u>Affidavit of Cynthia Bass</u> (exhibit E)

    Ms. Bass said Katrina, her sister, called her and told her that their brother had

just jumped through a window and was bleeding.  Ms. Bass went over there and saw

him in the hallway bleeding.  He did not respond when asked who did it to him.  The

**No. 4:06cv266-RH/AK**

paramedic came in and looked at him and then left yelling he had been shot.  The first officer came in and said he was just high.  Ms. Bass and her boyfriend and her grandmother were outside on the porch when they heard Katrina screaming.  Ms. Bass went back inside and saw Stanley holding Katrina on the floor.  The officer came in and told her to get out of the bathroom and pointed his gun at Stanley whose hands were in the air.  Other officers arrived and went into the bathroom where they tasered him over and over in his open wounds.  Then another officer hit him with a black stick.  The paramedics took him to the hospital.

f)     Affidavit of Classie Cooper (exhibit F)

Ms. Cooper states that she is 83 years old, but has a good mind and recalls the night her grandson, Stanley Bass, came into her house, but he did not push her down nor did he hurt her.  He came into her room and was bleeding and laid down on the floor by her bed.  Her granddaughter came in and took her outside and Stanley was still on the floor when she left him, but he did not hurt anyone but himself and she does not want to press charges.

g)     Affidavit of Annie Washington (exhibit G)

Ms. Washington is Stanley Bass' mother and she attests that Plaintiff's attorney never came to see him during the eight months he was in jail.  His attorney told him he was facing a life sentence, which was a lie.  Plaintiff was running from someone on the night in question, jumped through his grandmother's window and hurt himself, he should not be in prison for this.  A Florida Bar Complaint form is attached to her statement.

**No. 4:06cv266-RH/AK**

h)    Affidavit of Stanley Bass (exhibit H)

Mr. Bass attests that he was the victim of a robbery when he ran to his grandmother's house and was forced to jump through the window.  He jumped on his sister and she started screaming, and he asked her to help him he was in such pain.  Then he went to his grandmother's room and grabbed her asking her to help him.  His sister called 911, but was crying so much she had to hang up.  His sister Katrina, his grandmother, and then his other sister, Cynt, and her boyfriend were all there when the officers and paramedics arrived.  The paramedic yelled that he had been shot.  The officer said he was high on crack because his teeth were black, and then he left the house.  His sister Katrina went to the bathroom and Plaintiff pushed on the door and fell onto the floor with his sister screaming.  Then Officer Finales came back in with his gun drawn, pulled Katrina out of the bathroom, and then Plaintiff kicked the door closed.  The officer kicked it back open and Plaintiff screamed don't kill me with his "hand" in the air.  The officers tasered him several times, even though he had turned over as they said.  They told him they were going to tase him until he complied.  He tried to get up, but the officers pulled him back down grabbing at his wounds to inflict more pain.  Officer Brannon said he hated crack smoking sons-of-bitches and hit him ten times with his flashlight.  He hit him about 5 or 6 more times with his baton.  At no time was he ever asked to show his hands and Officer Finales knew he did not have a gun.  The officers left taser marks on his right thigh.  Plaintiff was not resisting arrest, his kicking was a reaction to the excessive force and pain to his wounds.

**No. 4:06cv266-RH/AK**

**V.     Analysis**

a)      <u>Heck</u> bar (doc. 34)

Defendants argue in their supplement to the special report that because Plaintiff pled no contest to resisting an officer with violence and was convicted for that offense, he is barred from asserting a claim for damages related to this offense *citing* <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994); and <u>Dyer v. Lee</u>, 2006 WL 2092264 (M.D. Fla.).

In a relatively recent decision (June 5, 2007), the United States Court of Appeals for the Eleventh Circuit reversed the decision in <u>Dyer</u>, holding that even though an arrestee was convicted of resisting arrest with violence in state court, he was not barred by <u>Heck</u> from bringing a §1983 suit for excessive force against the arresting officers. <u>Dyer v. Lee</u>, 488 F.3d 876 (11th Cir. 2007).  The court explained that <u>Heck</u> bars suits under section 1983 that would necessarily imply the invalidity of a state court conviction because the Supreme Court in <u>Heck</u> was concerned that if prisoners could challenge their state court convictions under section 1983 the process of habeas relief and its exhaustion requirement could be bypassed.  <u>Id.</u>, at 879-880.  The court found that since "the lawfulness of the arrest was not an element of the offense of resisting arrest with violence" under Florida law, a successful claim of excessive force by the arresting officer would not negate an element of the underlying charge, and therefore, would not challenge the conviction for that charge.  <u>Id</u>

The Florida District Court of Appeal for the First District, in examining two state statutes concerning resisting arrest, found:

**No. 4:06cv266-RH/AK**

> Chapter 776, Florida Statutes, recognizes principles set forth in the case law of other jurisdictions in that the right of self-defense against the use of excessive force by a police officer is a concept entirely different from resistance to an arrest, lawful or unlawful, by methods of self-help. The former concept is grounded on the view that a citizen should be able to exercise reasonable resistance to protect life and limb; which cannot be repaired in the courtroom. The latter view is based on the principle that a self-help form of resistance promotes intolerable disorder. Any damage done by an improper arrest can be repaired through the legal processes.

Ivester v. State, 398 So.2d 926 (Fla. Dist. App. 1981).

Thus, according to Florida Statutes, sections 776.051(1) and 843.01, the elements required to justify a charge under this statute are only that a person uses force to resist arrest by a known law enforcement officer such as pulling or striking at an officer.  State v. Davis, 652 So.2d 942 (Fla. 5th DCA 1995).

Applying these cases to the facts at hand, Plaintiff could plead guilty and be convicted of resisting arrest, i.e. kicking and grabbing at the Defendants, and still assert a claim that they used excessive force against him during this arrest that would not imply the invalidity of the conviction for resisting the arrest.  As the court in Dyer stated, "as long as it is possible that a §1983 suit would not negate the underlying conviction, then the suit is not *Heck* barred."  Dyer, 488 F.3d at 879. The bar to recovery set forth in Heck would apply only if  "a successful §1983 suit would necessarily negate one of the elements of the underlying offense; under those circumstances a conviction could not stand, as a matter of law."  Id., at 880.  Other courts have limited Heck in similar circumstances: Thore v. Howe, 466 F.3d 173, 180 (1st Cir. 2006)(a 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying

**No. 4:06cv266-RH/AK**

state conviction and so is not barred by Heck); Nelson v. Jashurek, 109 F.3d 142, 145-146 (3rd Cir. 1997) (same);  VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir.2006) (same); Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir. 2005) (same); Martinez v. City of Albuquerque, 184 F.3d 1123, 1125 (10th Cir. 1999).  At least two circuits have held that where the excessive force claim and the conviction are "so interrelated factually" that a decision on the section 1983 claim would then negate a fact necessary to the conviction, then Heck may be applicable.  See Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002) (Cunningham's claims are barred under Heck because the complaint disputed several factual issues that the state jury had already resolved against him); Hainze v. Richards, 207 F.3d 795, 798 (5th Cir. 2000) (excessive force claim barred because individual convicted on same facts for aggravated assault).

In reviewing the facts to which Plaintiff pled guilty at the sentencing hearing, the facts underlying the resisting arrest charge were as follows:

> They commanded him to open the door, he refused to do so.  The door was kicked in.  He was laying with his hands behind him.  They ordered him to show his hands, show his hands, he refused to do that.  When they tried to remove him, he started kicking and flailing at them.  That's the resisting with violence charge.

Under the cases set forth above, Plaintiff did not plead guilty to any facts that if resolved differently in the present lawsuit, would undermine the conviction, and therefore, Heck is not a bar to the excessive force claim.

No. 4:06cv266-RH/AK

b)      Excessive Force

A claim of excessive force in the course of an arrest, investigatory stop, or any other "seizure" of a free citizen is analyzed under the Fourth Amendment and its "reasonableness" standard.  Graham v. Connor,  490 U.S. 386, 109 S.Ct. 1865, 1871 and n. 10, 104 L.Ed.2d 443 (1989);  Hamm v. Powell, 874 F.2d 766 (11th Cir. 1989), as modified on rehearing, 893 F.2d 293 (1989).  The issue of "reasonableness" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 109 S.Ct. at 1872.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force, the same standard of reasonableness applies:  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028], at 1033 [(2d Cir.), cert. denied, 414 U.S. 1033 (1973)], violates the Fourth Amendment  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

The facts regarding this claim which are not in dispute are that on September 3, 2005, Plaintiff entered the residence of a family member through a window, bleeding and injured.  His sister called 911 and paramedics and law enforcement arrived.  There was some confusion as to whether Plaintiff had been shot.  Officers Finales, Larremore,

**No. 4:06cv266-RH/AK**

Brannon and Johnson were involved in the incident which culminated in the bathroom of this residence.  Plaintiff was tasered numerous times and hit by a flashlight and baton.  He was taken to the hospital that night.

The facts pertinent to the excessive force claim that remain in dispute are whether Plaintiff had surrendered and shown both his hands to the officers before he was tasered, whether he was handcuffed when he was tasered and hit with the flashlight and baton, whether he was tasered in his open wounds, and whether he was treated at the hospital for injuries resulting from breaking a window at the home or from the tasering and beating he received from the officers.  Plaintiff has provided his own affidavit and those of several other witnesses who attest that he had surrendered to the officers before he was tasered and beaten and that he did not get up as they told him to because he was physically unable to get up, not because he was refusing their commands.

Obviously, there are conflicting versions of the facts between the parties on these points, as well as conflicts between facts asserted in Plaintiff's amended complaint, and those set forth in his affidavit and the affidavits submitted on his behalf. However, it is not the Court's role to weigh conflicting evidence or make credibility determinations when determining a motion for summary judgment.  Mize v. Jefferson City Bd. of Education, 93 F.3d 739 (11th Cir. 1996).  These issues must be resolved by the trier of fact, which in this case will be a jury.

**No. 4:06cv266-RH/AK**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

Motion for Summary Judgment (doc. 36) be **DENIED**, and that this cause be remanded

to the undersigned for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this  _*7*<sup>th</sup>_  day of December, 2007.



_*s/ A. KORNBLUM*_ _____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

     **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**



**No. 4:06cv266-RH/AK**